**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

---------------------------------------------------------x
In re:                                  :         Chapter 7
                                        :
Hope M. Stefenson,                      :         Case No.: 05-51638 (AHWS)
    Debtor                              :
---------------------------------------------------------x
Hope M. Stefenson,                      :
    Plaintiff,                          :
                                        :
v.                                      :         Adv. Proc. No.: 07-5023
                                        :
Educational Credit Management           :
Corporation,                            :
    Defendant                           :

APPEARANCES:

Robert M. Fleischer, Esq.                    Attorney for Plaintiff Hope M. Stefenson
Pryor Cashman, LLP
410 Park Avenue
New York, NY 10022

Stephen R. Klaffky, Esq.                     Attorney for Defendant Educational
Brown Rudnick Berlack Israels LLP            Credit Management Corporation
185 Asylum Avenue
Hartford, CT 06103

**Memorandum of Decision on Dischargeability of**

**Consolidated Student Loan Pursuant to 11 U.S.C. § 523(a)(8)**

Alan H. W. Shiff, United States Bankruptcy Judge

    The plaintiff - debtor, Hope M. Stefenson, obtained a chapter 7 discharge of her dischargeable debts on January 30, 2006 and commenced this adversary proceeding on April 25, 2007 to obtain an undue hardship discharge of a consolidated student loan debt, pursuant to 11 U.S.C. § 523(a)(8).

BACKGROUND

The plaintiff was born on December 18, 1951. She is 56 years of age. She has no children or dependents and lives alone in a one-bedroom apartment in Danbury, Connecticut. Tr. January 9, 2008 at 10-13. In 1997, she received a Masters of Social Work degree from New York University. Tr. at 14-15. She funded that education by obtaining five student loans. Tr. at 15. In January 2000, she consolidated those loans into the debt she now seeks to discharge. Tr. at 19. The parties have stipulated that the amount owed, as of January 9, 2008, is $95,785.20.[1] If required to repay the loan, the plaintiff will have to make monthly payments of about $731 until she is approximately 80 years old, i.e., until the year 2031. Tr. at 47-48; Plaintiff's February 25, 2008 Post-Trial Memorandum at 6.

Because of licencing requirements that were enacted after she obtained her degree, the plaintiff is prohibited from employment as a social worker. Tr. at 34-35. Thus, she is currently employed as an office manager at a garden center in Wilton, Connecticut, where she works approximately 30 hours per week and earns an annual gross income of approximately $36,400. Tr. at 39-40 and 54-57; Pl.'s Exh. B at Sch. I.

The court held a trial in this matter on January 9, 2008, after which the parties submitted post-trial briefs. After reviewing all the record evidence, the court issued an order scheduling a hearing in which the plaintiff was given an opportunity to identify "all evidence that directly or by reasonable inference" supports her claim that her rental expense does not preclude her from receiving a discharge of her student loan. *See* dkt. # 47.

In response, the plaintiff filed a motion requesting that the court take judicial notice of a report entitled *The Real Cost of Living in 2005: The Self-Sufficiency Standard for Connecticut* (the "Report"),[2] or, in the alternative, to reopen trial to admit

---

[1] *See* Plaintiff's Post-Trial Memorandum dated February 25, 2008 ("Pl.'s Memo") at 2 and note 3; Defendant's Post-Trial Memorandum dated March 10, 2008 ("Def.'s Memo") at note 1.

[2] The Report "measures how much income is needed for a family of a certain composition in a given place to adequately meet . . . basic needs" such as housing,

the Report into evidence. *See* dkt. # 50. The court issued an order reopening the trial for the limited purpose of allowing the plaintiff to admit the Report as a full exhibit.[3] *See* dkt. # 54. The trial continued on September 23, 2008.

## DISCUSSION

Bankruptcy code section 523(a)(8) provides, in relevant part, a "discharge under section 727 . . . does not discharge an individual debtor from any debt . . . (8) unless excepting such debt from discharge . . . would impose an undue hardship on the debtor . . ." The plaintiff must prove by a fair preponderance of the evidence that she has satisfied that test. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). In this circuit, a three-prong test, known as the *Brunner* test, *see Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987), has been established to determine whether a debtor has satisfied that burden. Under *Brunner*, the plaintiff must demonstrate that (1) if forced to repay the loan she could not maintain a "minimal standard of living" based on her current income and expenses, (2) "additional circumstances" exist indicating that her current inability to repay the loan is likely to persist for a significant portion of the loan repayment period, and (3) she has made "good faith" efforts to repay the loan. *Id.*

*Minimal Standard of Living*

To satisfy the first prong of *Brunner,* the plaintiff must demonstrate that if she is required to repay the loan, she could not maintain a minimal standard of living based on her current income and expenses. *See, e.g., Porrazzo v. Educ. Credit Mgmt. Corp., (In re Porrazzo),* 307 B.R. 345, 348 (Bankr. D.Conn. 2004) ("[d]istilled to its essence, [the first prong of *Brunner*] requires the [c]ourt to examine the [d]ebtor's current income and

---

food, healthcare, and transportation, and accounts for regional and local variations for such costs. Pl.'s Exh. Z at 1 and 2-3.

[3] Specifically, the parties agreed that neither side would seek to introduce any additional evidence, but each could identify provisions of the Report that relate to expenses besides the plaintiff's rent.

expenses and determine a flexible minimal standard of living"). *See also Borrero v. Conn. Student Loan Found., (In re Borrero)*, 208 B.R. 792, 796 (Bankr. D.Conn. 1997).

The record discloses that the plaintiff has monthly after tax income of $2,272 and expenses of $2,555. Tr. at 59, 70; Pl.'s Exh. X. Included in her expenses is rent in the amount of $ 1,150.[4] Thus, even without any monthly payment of her student loan debt, the plaintiff has a monthly deficit of $283. *Id.*

Notwithstanding that deficit, the defendant argues that the plaintiff does not satisfy the first prong of *Brunner* because her expenses are excessive. In support of that claim, the defendant refers to the Report, which states that a single adult living in the same geographic area as the plaintiff can obtain "housing that meets minimum standards of decency, but is not luxurious" for $815 per month.[5] Pl.'s Exh. Z at 5 and 64, Tbl. 3. The plaintiff's monthly rental expense of $1,150 is $335 in excess of that amount. Although the guidelines in the Report are not a dispositive determinant of a minimal standard of living, *see, e.g.*, *Hoyle v. Pa. Higher Educ. Assist. Agency*, 199 B.R. 518, 523 (Bankr. E.D.Pa. 1996), they are the only evidence offered by the plaintiff in support of her claim that her lifestyle does not exceed the minimal standard of living required by *Brunner.*

The conclusion is therefore warranted that the payment of rent in excess of the unchallenged [6] baseline established by the Report defeats the plaintiff's claim that her consolidated student loan debt should be discharged. Nonetheless, it is noteworthy that the plaintiff incurs other expenses which are also in excess of the baseline

---

[4] This figure represents the sum of the plaintiff's monthly expenses of $950 for rent, $55 for electricity, and $145 for natural gas. Pl.'s Exh. X. The court uses the sum of those expenses to compare the analogous "Housing" expense contained in the Report, which comprises both rent and utilities. *See* Pl.'s Exh. Z at 5 and 64, Tbl. 3.

[5] The court notes that the expense figures corresponding to the plaintiff's geographic location, Danbury, Connecticut, *see* Tr. at 10, are set forth in Table 3 of the Report. *See* Pl.'s Ex. Z at 64, Tbl. 3. Because the Report defines Greater Danbury as including only the areas surrounding Danbury, *id.* at 51, the figures contained in Table 4 do not apply.

[6] As noted, it was the plaintiff who offered the Report to buttress her claim that she has satisfied the *Brunner* test.

established by the Report. For example, the plaintiff's $707 average monthly groceries expense is in excess of the $218 per month food expense that the Report states is necessary to maintain a minimal standard of living. Pl.'s Exh. X; Pl.'s Exh. Z at 64, Tbl. 3. The plaintiff has attempted to explain the disparity by including non-food items in the groceries expense, such as prescription medication, products for household cleaning, laundry, personal hygiene, and other miscellaneous household supplies. Tr. at 72, 81-82, and 115-17; Pl.'s Exh. V. But even accounting for those non-food items, the plaintiff's groceries expense is $227 more per month than the analogous $480 [7] per month provided by the Report.

Another of the plaintiff's expenses which is in excess of the baseline established by the Report is her monthly transportation cost of $566.[8] The bulk of this expense is composed of monthly automobile loan payments of $356, which end in 2009. Tr. at 112; Pl.'s Exh. X. In support of that expense, the plaintiff testified that she lives alone and requires reliable transportation to commute to work. Tr. at 66-67 and 111-13. She explained that her decision to purchase a new automobile was based on a trade-off between repair bills and automobile loan payments. Tr. at 112; Plaintiff's Post-Trial Reply Memorandum dated March 14, 2008 at 2. This justification, however, does not neutralize the fact that she spends $324 per month more than the $242 transportation expense allocated in the Report. Pl.'s Exh. Z at 64, Tbl. 3. Moreover, there is nothing in the record to suggest that she could not have obtained a less expensive automobile at the level of reliability she reasonably requires.

Based on that evidence, the plaintiff spends at least $886 per month more on rent, food, and transportation than the applicable baseline established by the Report. That amount would more than satisfy the approximately $731 per month payment that the plaintiff is required to make on her student loan, *see supra* at 2.

---

[7] This figure represents the sum of the Report's monthly expenses for "Food" ($218), "Health Care" ($122), and "Miscellaneous" ($140) items. Pl.'s Exh. Z at 64. Tbl. 3.

[8] This figure represents the sum of the plaintiff's monthly expenditures for an automobile loan ($356), auto/renters insurance ($35), and gasoline ($175). Pl.'s Exh. X. The court uses the sum of these expenses so that it may compare them with the analogous "Transportation" figure provided in the Report. Pl.'s Exh. Z at 6-7 and 64.

## CONCLUSION

It is not necessary to assess the plaintiff's compliance with the other prongs of the *Brunner* test as her failure to satisfy the minimal standard of living test is fatal to her claim in this proceeding. Accordingly, judgment shall enter in favor of the defendant, and IT IS SO ORDERED.

Dated at Bridgeport, Connecticut, this 14th day of November, 2008.

*Alan H. W. Shiff*
Alan H. W. Shiff
United States Bankruptcy Judge